Steven R. Blackburn, State Bar No. 154797
Matthew A. Goodin, State Bar No. 169674
EPSTEIN BECKER & GREEN, P.C.
One California Street, 26th Floor
San Francisco, California 94111-5427
Telephone: 415.398.3500
Facsimile: 415.398.0955
sblackburn@ebglaw.com
mgoodin@ebglaw.com

Attorneys for Defendant,
USPROTECT CORPORATION

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| KONSTANTINOS MOSHOGIANNIS, | CASE NO. C-07-5128 JF |
|---|---|
| Plaintiff, | **E-Filing** |
| v. | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT USPROTECT CORPORATION'S MOTION TO DISMISS** |
| USPROTECT CORPORATION, | |
| Defendant. | |

## I. INTRODUCTION

In response to Defendant's motion, Plaintiff has agreed that his Sixth Cause of Action for minimum-wage violations under the FLSA is not viable and has agreed to dismiss that claim. Addressing Defendant's motion as to Plaintiff's Fourth and Seventh Causes of Action, Plaintiff does not contest that the Service Contract Act ("SCA") and the Contract Work Hours and Safety Standards Act ("CWHSSA") apply to his employment with USProtect. Plaintiff also does not dispute that these statutes do not provide a private right of action.

Plaintiff's Opposition attempts to demonstrate that neither the SCA nor the CHWSSA "preempt" his state-law claim for meal and rest period violations or his FLSA claim. In doing so, however, Plaintiff either misunderstands the issues presented by Defendant's motion and the cases cited therein, or has created a straw-man argument in an attempt to confuse the issues. Nowhere in Defendant's motion does it argue that the SCA or the CHWSSA "preempt" his claims; the word "preempt" is not mentioned even once in Defendant's entire moving brief.

Instead, the point of Defendant's motion is that with the SCA and the CWHSSA, Congress has undertaken the effort to establish a "comprehensive administrative rubric for the protection of federal service workers," and "[w]here Congress has established [such] a regulatory scheme, the specification thereof normally excludes duplicative judicial jurisdiction." *Miscellaneous Service Workers, etc. v. Philco-Ford Corp., WDL Div.*, 661 F.2d 776, 781 (9th Cir. 1981) Defendants do not contend that the SCA and/or the CWHSSA *preempt* either state wage and hour laws or the FLSA. And is not that Plaintiff is without a remedy as to these claims, it is just that the exclusive right to recover that remedy rests with the Secretary of Labor. As the Supreme Court has observed, when Congress creates such a comprehensive administrative scheme:

> Congress for reasons of its own decided upon the method for the protection of the "right" which it created. It selected the precise machinery and fashioned the tool which it deemed suited to that end …. (It) is for Congress to decide how the rights it creates shall be enforced.

*Switchmen's Union of North America v. National Mediation Board*, 320 U.S. 297, 64 S. Ct. 95, 88 L. Ed. 61 (1943).

And what are the "rights" at issue in Plaintiff's claims that are the subject of this motion? The "right" to be paid "one hour of additional pay" for missed meal and rest periods at a rate promulgated under the SCA, and the "right" to be paid one-and-a-half times the prevailing wage for work in excess of 40 hours per week as governed here exclusively by the CWHSSA. Because these "rights" exist solely by virtue of comprehensive administrative schemes established by Congress, Plaintiff may not use other statutes or common-law claims to circumvent those schemes.

The reason for this is easy to fathom. Federal service workers such as Plaintiff perform an important federal function. USProtect's employees perform crucial first-responder security at important federal facilities across the country, such as courthouses and military bases. It must be considered that, in enacting these comprehensive schemes that do not provide for private suits for wages or overtime pay by employees, Congress sought to minimize disruption to the important federal services performed by these employees. Plaintiff here wants this Court to except him from this Congressional scheme. But by doing so for one, the Court will open the floodgate for thousands of similar individual lawsuits by federal service employees across the country, potentially crippling many critical federal services, facilities, and contracts.

## II. LEGAL ANALYSIS

### A. Plaintiff's Fourth Cause of Action Is Barred by The Service Contract Act

#### 1. The Mere Fact that California Recognizes a Private Right of Action to Enforce Meal and Rest Period Violations Does Not Mean Such a Claim Can Be Used as an End-Run Around the Service Contract Act

Plaintiff claims to divine great meaning from a single sentence in *Miscellaneous Service Workers, etc. v. Philco-Ford Corp., WDL Div.*, 661 F.2d 776 (9th Cir. 1981), which simply noted that certain Hawaiian wage laws, "unlike the SCA, provide for private actions by employees to 'recover unpaid wages.'" *Id.* at 783. From this brief and unremarkable dicta, Plaintiff extrapolates a broad holding, and asserts that the "teaching" of the case, therefore, is that "state

- 3 -

law claims for unpaid wages on contracts covered by the SCA are cognizable as long as the employees plead a viable state claim which provides for a private right of action." Opposition at 5:20-24. This attempted logical long-jump falls far short of its mark.

First, no possible reading of the *Miscellaneous Service Workers* case supports Plaintiff's interpretation of its "teaching." The court merely observed that the Hawaiian statutes did provide a private right of action, and then affirmed the district court's dismissal of plaintiff's claims under those state statutes because those laws only prevented the employer from withholding sums or benefits to which the employee had rights by virtue of a contract with his current employer, not a predecessor. *Id.* at 783. Because the court affirmed dismissal of these claims on this ground, it did not need to, nor did it, decide whether they were barred by the SCA. It is well settled that "when an issue is not argued or considered in a decision, such decision is not precedent on that issue." *Houston Indus. v. United States*, 78 F.3d 564, 567 (Fed. Cir. 1996).

Second, and where the utter fallacy of Plaintiff's interpretation is truly laid bare, RICO also provides a private right of action to plaintiffs, but the court in *Danielsen v. Burnside-Ott Aviation Training Center*, 941 F.2d 1220 (D.C. Cir. 1991) nonetheless held that the SCA barred plaintiff from pursuing a private action under RICO when the damages sought were equivalent to the prevailing wages set by the SCA because allowing such a claim would undercut the intended specific remedy prescribed by Congress in the SCA. *Id.* at 1227-1228. Obviously, if RICO *did not* provide a private right of action, there would be no need for the court to have analyzed whether it was an impermissible end-run around the SCA in the first place.

The mere fact that California Labor Code section 226.7 allows employees to bring private actions does not advance Plaintiff's argument in the slightest. Indeed, it is simply the threshold finding required before proceeding to analyze whether the claim is an impermissible end-run around the SCA and/or the CWHSSA.

///
///
///

- 4 -

SF:160261v1

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. C-07-5128 JF

### 2. Plaintiff's Claim For Failure to Provide Rest and Meal Periods Is Barred by the Service Contract Act

While Plaintiff nominally brings his claim for meal and rest period violations under state law, the measure of damages for such a claim is "one hour of additional pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." Cal. Labor Code § 226.7. Plaintiff does not allege that he was paid a rate fixed by contract between himself and Defendant, nor does he allege that his wage rate was set by any state law. Instead, Plaintiff alleges USProtect failed to pay its employees the *"local going-wage rate in accordance with its contracts with the United States Government . . . ."* First Amended Complaint, ¶¶ 4, 51(g) (emphasis added). It is therefore inescapable that Plaintiff's "regular rate of compensation" under section 226.7 is precisely the "local going-wage rate in accordance with its contracts with the United States Government" as promulgated under the SCA. This Court must, of necessity, utilize the prevailing wage promulgated under the SCA in order to determine the amount of damages that might be available under this claim, and Plaintiff's own allegations demonstrate this best. Plaintiff's Opposition urges that the Court must accept his allegations as true in ruling on Defendant's motion to dismiss. Defendant could not agree more.

The central failing of Plaintiff's Opposition as to this claim is its singular focus on the theory of recovery, rather than the nature of the damages sought. Thus, for example, Plaintiff points out that his claim is not an indirect attempt to enforce the SCA but rather a direct attempt to enforce a "valid state law . . . to enforce the State's policy of mandatory rest and meal breaks." Opposition at 6:24-7:1. Yet the teaching of the many cases cited in Defendant's moving papers is that in determining whether a claim is barred as an attempted end-run around the SCA, the primary focus is on the nature of the recovery sought. For example, in *United States ex rel. Sutton v. Double Day Office Servs.*, 121 F.3d 531 (9th Cir. 1997), the Ninth Circuit makes clear that any claim seeking "lost wages" due to a "failure to pay prevailing wages" promulgated under the SCA is "equivalent to an SCA action" and is therefore barred. *Id.* at 534. Because the California Supreme Court in *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094 (2007),

- 5 -

held that the "one hour of additional pay" in section 226.7 is a "premium wage" akin to the overtime premium, there is no dispute that Plaintiff's claim under Labor Code section 226.7 seeks "unpaid wages." And because the amount of those "unpaid wages," as set forth above, is an amount set by the SCA, this claim is an impermissible attempt to enforce a right to SCA wages.

In *Brown v. Luk, Inc.*, 1996 U.S. Dist. LEXIS 7173, 3 Wage & Hour Cas. 2d (BNA) 560 (N.D.N.Y. 1996), plaintiffs alleged they were paid below the prevailing wage required under the SCA, were not paid time-and-a-half on holidays, and were not paid for on-call or travel time. Some of their claims were asserted under "various provisions of New York's Labor Law." *Id.* at *3. Just as Plaintiff does here, the plaintiffs in *Brown* urged that because "this matter also involves a federal service contract, the prevailing wage rate [under the SCA] must also be used to correctly determine the correct pay rate for this unpaid [overtime]." *Id.* at *10. Despite the fact that the New York state laws provided for a private right of action, the court nonetheless found plaintiff's claims were an impermissible attempt to circumvent the SCA's administrative scheme because they sought to "import[] the SCA regulations as the measure of their damages." *Id.* at *10-11. Here, because the remedy of "one hour of additional pay" for meal and rest period violations has been characterized by the California Supreme Court as a "premium wage," it should be treated no differently that the overtime premium in *Brown*; if it was impermissible in that case to "import" the SCA regulations as the measure of damages for overtime pay, it must be equally impermissible here to import SCA prevailing wages as the measure of damages for Plaintiff's meal and rest period claim.

Plaintiff has not cited any authority which would support allowing Plaintiff's meal and rest period claim to go forward. Instead, Plaintiff only attempts to distinguish the great weight of apposite authority supporting Defendant's motion. There attempts are unpersuasive at best. Some appear to be based on nothing other that plaintiff's own wishful thinking. For example, while citing no support from any actual text in the case itself, or any reasoning whatsoever, Plaintiff suggests that *Miscellaneous Service Workers* and *Sutton* "should not be interpreted to

- 6 -

abridge rights under other statutes." Opposition at 6:9-13. Yet, as mentioned above, the court in *Danielsen, supra*, held that the SCA barred plaintiffs from pursuing a private action under RICO when the damages sought were equivalent to the prevailing wages set by the SCA. Surely, this result "abridged" Plaintiff's rights under RICO.

Plaintiff's attempt to distinguish *Danielsen* by claiming, wrongly, that the plaintiffs' RICO claim alleged "no substantive violation of the law other than the SCA." Opposition at 8:5-6. But the plaintiffs alleged that defendant entered into contracts with the U.S. Navy which contained improper wage classifications (an SCA violation) and engaged in mail and wire fraud by using the mails to further those contracts (an allegation designed to bring the claim within the reach of RICO, but irrelevant to the SCA). In addition, plaintiffs also asserted a common law fraud and deceit claim based on an allegation that defendant failed to disclose that the contracts did not contain the proper wage determinations. *Id.* at 1225-1226. The *Danielsen* court dismissed the four RICO-based claims as being barred by the SCA, and opined that the fraud claim might be properly dismissed on the same grounds, but instead affirmed the district court's dismissal of the claim for want of federal pendent jurisdiction. *Id.* at 1222-1223.

Plaintiff also seems to think that the validity of the Second Circuit's decision in *Grochowski v. Phoenix Constr. v. Ypsilon Constr. Corp.* (2d Cir. 2003) 318 F.3d 80 is somehow undermined merely because a New York state court criticized its reasoning and instead opined that the Davis-Bacon Act did not preclude state common law or statutory claims for relief. Opposition at 8:17-23, citing *Cox v. NAP Constr. Co.*, 40 A.D. 459 (2007). If anything, however, this undermines the validity of the *Cox* decision, not *Grochowski*. In *Grochowski*, the plaintiffs attempted to avoid the dismissal of their common law claims by pointing to a New York case which held that New York Labor laws specifically authorize parallel actions under the state administrative rubric and under common law causes of action. Yet the *Grochowski* court rejected this argument observing that since the contracts under which plaintiffs were employed were federally funded, they were governed by the Davis-Bacon Act, and not New York Labor

laws. *Id.* at 83. Thus, *Grochowski* provides still further support that the SCA can and does bar certain claims based on state wage and hour laws.

    **B.**    **Plaintiff's Claim under the Fair Labor Standards Act is Barred by the Service Contract Act and the Contract Work Hours and Safety Standards Act**

As previously mentioned, the SCA requires government contractors to pay service employees minimum prevailing wages and to include a provision in the contract specifying the applicable prevailing wage rate. 41 U.S.C. § 351(a); *Sutton, supra,* 121 F.3d at 533. The CWHSSA requires laborers to be paid at a rate equal to one-and-a-half times their "basic rate of pay" for all work in excess of 40 hours in one workweek. 40 U.S.C. § 3702 (a). The FLSA, identical to the CWHSSA, provides that employees be paid "at a rate not less than one and one-half times the regular rate at which he is employed" for all work performed in excess of 40 hours in one workweek. 29 U.S.C. 207(a)(1). The "regular rate" under the FLSA is defined as including "all remuneration paid to or on behalf of an employee," with exceptions for certain fringe benefits – the same benefits which are also excludable from the "basic rate" under the SCA and CWHSSA. *See* 41 U.S.C. § 355 (in determining the overtime rate under any Federal law, the hourly rate shall not include fringe benefits excluded under the FLSA).

Thus, in sum, the SCA dictates the "basic rate of pay," and the CWHSSA requires payment of one-and-a-half times that "basic rate of pay" for overtime work. The "basic rate of pay" under the CWHSSA is the same as the "regular rate" under the FLSA, and in this case, both are set by the SCA.

Plaintiff does not dispute that the Ninth Circuit's decisions in *Miscellaneous Service Workers* and *Sutton* bar a plaintiff from bringing a private right of action for violation of the SCA (and by extension, the CWHSSA) under the guise of another claim. Because the prevailing wage rates under the SCA are necessarily used in computing an employee's overtime rate under both the FLSA and the CWHSSA, binding Ninth Circuit precedent compels dismissal of Plaintiff's FLSA claim precisely because that claim must, *as a matter of law*, seek the exact

same remedies available under those statutes. *Sutton, supra*, 121 F.3d at 533 ("a party may not bring an action for the equivalent of SCA damages under the guise of another statute."). As a matter of logic, there is no part of Plaintiff's FLSA overtime claim that does not seek remedies available under the SCA and CWHSSA: the prevailing wage under the SCA is Plaintiff's "basic rate of pay," and the FLSA requires payment of one-and-a-half times that rate for overtime hours, exactly the same as required by the CWHSSA.

Plaintiff urges that this court should blindly follow Judge Whyte's decision in the *Mersnick* case, as opposed to looking afresh at this very unique and complex issue. Indeed, Plaintiff professes to find it "remarkable" that Defendant did not direct the court's attention to Judge Whyte's decision in *Mersnick v. USProtect*, 2006 U.S. Dist. LEXIS 94408 (N.D. Cal. 2006). What is perhaps more remarkable is why Plaintiff would expect Defendant to cite to a non-binding, non-precedential, and non-published decision which it is under no legal or ethical duty to cite,[1] and with which Defendant strenuously disagrees.[2]

In any event, Judge Whyte's observation in *Mersnick* that the FLSA, SCA and CWHSSA are "mutually supplemental" is, by itself, irrelevant to the issue before this court. In the *Mersnick* decision, Judge Whyte relied exclusively on the decision in *Masters v. Maryland Mgmt. Co.*, 493 F.2d 1329 (4th Cir. 1974) which held that the SCA, CWHSSA and the FLSA are "mutually supplemental." However, Judge Whyte virtually ignored the key qualification placed on this language by the *Masters* court: "none of the three statutes are mutually exclusive of the other, [and] the provisions of all may apply *so far as they are not in conflict.*" *Id.* at 1332. (emphasis added.) Defendant urges that one conflict among the statutes is that when they overlap coextensively as they do in this case, a conflict is present because the FLSA provides a private right of action but the SCA and CWHSSA do not. The conflict is even more pronounced

---

[1] *See* ABA Model Rule 3.3, which clarifies an attorney's duty is to cite adverse "*controlling*" decisions. *And see*, W. Schwarzer, et al., *Federal Civil Procedure Before Trial* (The Rutter Group), Chap. 12, 12:65, pp. 12-26, in which the commentators caution against reliance on unpublished decisions. "The fact that the judge or judges who issued the opinion did not certify it for publication renders it less persuasive than a published decision."

[2] Defendant filed a motion for leave to file a motion for reconsideration as to Judge Whyte's decision on this particular issue. That motion was denied by Judge Whyte on February 12, 2007.

- 9 -

here because the Fourth Circuit in *Masters* was not presented with binding authority, such as *Sutton* binds this court, which holds that the SCA "conflicts" with, and bars, claims that seek damages available under the SCA and, by extension, the CWHSSA. Still more compelling, *Masters* did not even squarely deal with the issue present in this case, *i.e.* a true situation where the three statutes overlap coextensively. It is far from clear that the court in *Masters* would not have found an impermissible conflict among these statutes if presented with the facts of the case at bar. In *Masters*, the court noted that no prevailing wage determination under the SCA had even been brought to the court's attention, and therefore the effect of the SCA on the outcome of the case was "*at best illusionary and theoretical.*" *Masters, supra*, 493 F.2d at 1333, fn. 2 (emphasis added).

Thus, the FLSA may indeed incorporate the prevailing wage under the SCA as observed by Judge Whyte in *Mersnick*, but this alone does not mean that there is no conflict here. An FLSA claim, like Plaintiff's here, which seeks to utilize the prevailing wage under the SCA as the "regular rate" for computation of the overtime rate as required by CWHSSA, does "conflict" with the exclusive administrative remedies under the SCA and the CWHSSA because such a claim is an exact duplicate of a claim for overtime under the CWHSSA where, like here, a plaintiff's wages are set by the SCA. Indeed, it is impossible to see how there is no "conflict" in this situation under the reasoning of *Sutton*. And therein lies Defendant's principal disagreement with Judge Whyte's decision in the *Mersnick* case. *Masters* recognizes in situations where the FLSA, SCA, and CWHSSA all apply in a given case, there *may be* situations where an impermissible conflict arises such that one or more of them do not apply. Under Judge Whyte's reasoning, it being applied in *Mersnick* to an FLSA claim that sought nothing but overtime for work over 40 hours in a workweek (like Plaintiff's claim here), there could never be such a conflict. Thus, Plaintiff is either entirely incorrect when he suggests that Defendant is asking this court to "reject the reasoning" of *Masters* (Opposition at 9:17-18), or Plaintiff simply does not understand the reasoning in that decision as applied to this case. Defendant's position is

entirely consistent with *Masters*: Defendant *agrees* that there are situations where there is an impermissible conflict among these statutes; *this case is precisely such a situation.*

Another flaw with the reasoning in *Mersnick* is that if Judge Whyte is correct that there is no conflict simply because the FLSA incorporates the prevailing wage rate under the SCA as the "regular rate," which is synonymous with the "basic rate of pay" CHWSSA, because both the CWHSSA and the FLSA require premium pay for work beyond 40 hours in one workweek, then any claim for failure to pay overtime where CWHSSA applies could always be asserted as a failure to pay overtime under the FLSA, and in such situations the comprehensive administrative scheme under both the SCA and the CWHSSA would be rendered meaningless, as would the holding in *Sutton*.

Other cases teach that the notion that the SCA, CWHSSA, and FLSA are "mutually supplemental" is entirely consistent with the decisions *Miscellaneous Service Workers*, *Sutton* and *Danielson* and with Defendant's position in this case. For example, in *Berry v. Andrews*, 535 F.Supp. 1317 (M.D. Ala. 1982), the plaintiff brought a claim for retaliatory discharge under the FLSA claiming that his employer terminated him for complaining to the Department of Labor ("DOL") regarding back wages under the SCA. The employer moved to dismiss the claim because the SCA did not allow a private right of action. Notably, the court agreed with both the decision in *Masters v. Maryland Management Co.*, *supra*, that the SCA and FLSA are mutually supplemental *and* the Ninth Circuit's decision in *Miscellaneous Service Workers* that the SCA does not allow a private right of action. *Id.* at 1318-1319. The court found no conflict between these holdings because, it observed, the SCA did not provide a mechanism for the DOL to levy sanctions against an employer who discharges an employee in retaliation for complaining about wages due under that Act, nor was such a retaliatory discharge even a violation of the SCA. The FLSA, however, does specifically prohibit retaliatory discharge and provides attendant remedies. Thus, the court held that the plaintiff was entitled to pursue a private action for alleged retaliatory discharge under the FLSA. In other words, as was the case in *Sutton*, the statutes were not "in conflict."

- 11 -

The same reasoning was employed in *Brown v. Luk, Inc.*, 1996 U.S. Dist. LEXIS 7173, 3 Wage & Hour Cas. 2d (BNA) 560 (N.D.N.Y. 1996) in which plaintiffs alleged they were paid below the prevailing wage required under the SCA, were not paid time-and-a-half on holidays, were not provided the total number of paid holidays required by law, and were not paid for on-call or travel time. Although the plaintiffs acknowledged that they could not bring a private action under the SCA, they claimed that the SCA is "mutually supplemental" to the FLSA and CWHSSA, and thus the prevailing wage rates under the SCA must be used to determine the correct pay rate. The court held that plaintiffs' claims for prevailing wage rates and holiday overtime pay were barred under the Ninth Circuit's reasoning in *Miscellaneous Service Workers* because an employees' remedies under the SCA "are restricted to administrative channels." *Id.* at * 11. Plaintiffs' suit, the court concluded, was an impermissible attempt to circumvent the SCA administrative scheme by "labeling their prevailing wage rate and holiday pay claims as arising under the CWHSSA and FLSA . . . and importing the SCA regulations as the measure of their damages." *Id.* at *10-11.[3] The court further concluded that plaintiffs' claims were not saved by decisions holding that the FLSA, SCA and CWHSSA are "mutually supplemental." Quoting from *Masters*, *supra*, 493 F.2d 1329, the *Brown* court held that those decisions "only mean that none of the three statutes are mutually exclusive of each other, and the provisions of all may apply *so far as they are not in conflict*." *Id.* (emphasis in original, citations and internal quotations omitted). The court held that because plaintiffs' CWHSSA and FLSA claims sought relief available under the SCA, they conflict with the administrative enforcement mechanism under the SCA.

The *Brown* case is squarely on point. Plaintiff attempts to distinguish it are entirely misplaced. First, Plaintiff suggests that the court in *Brown* "expressly rejected" the reasoning in *Masters*. As explained in the preceding paragraph, this is plainly wrong. Second, Plaintiff

---

[3] In *Brown*, the court was apparently not confronted with, and certainly did not decide, whether the CWHSSA provided for a private right of action and was apparently operating under the assumption that it did. Plaintiff here concedes the CWHSAA does not provide for a private right of action, making the reasoning of the *Brown* court all the more compelling.

- 12 -

SF:160261v1                                  REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
                                             SUPPORT OF MOTION TO DISMISS
                                             Case No. C-07-5128 JF

points out that the court allowed plaintiffs' claims for "on-call" time and "travel time." However, Plaintiff here asserts no such claims. Moreover, given the court's reasoning in *Brown*, if it had concluded that the CWHSSA did not provide a private remedy, it is clear that the court would have held that these remaining overtime claims were barred as well.

Finally, the court in *Foster v. Parker Transfer Co.*, 528 F.Supp. 906 (W.D. Pa. 1981) held that plaintiffs' claim for prevailing wages under the SCA, while not labeled as an SCA claim, was nonetheless barred because the SCA did not allow a private right of action. The court further observed that because plaintiffs did not allege that their wages fell below the minimum wage prescribed by the FLSA, they had no independent claim under the FLSA. *Id.* at 906. Because Plaintiff here has abandoned his FLSA minimum wage claim, the same result must obtain here.

That these three statutes are "mutually supplemental" means only that the statues overlap, and the fact that a plaintiff's employment is governed by the SCA/CWHSSA does not *necessarily* mean that he can never have an FLSA claim. But where, like here, the conduct at issue *is* an SCA and/or CWHSSA violation, then the employee is restricted to administrative channels. *Sutton, supra*, 121 F.3d at 534 (*qui tam* claim under False Claims Act allowed because claim based on misrepresentation to the government, not failure to pay prevailing wages under SCA); *Danielson, supra*, 941 F.2d at 1228 (RICO claim barred despite pleading failure to pay SCA wages was a "pattern of racketeering").

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

III. **<u>CONCLUSION</u>**

For the foregoing reasons, USProtect respectfully requests that Plaintiff's Fourth, Sixth, and Seventh Causes of Action be dismissed with prejudice.

DATED: February 29, 2008                     EPSTEIN BECKER & GREEN, P.C.

                                              By:    /s/ Matthew A. Goodin
                                                     Steven R. Blackburn
                                                     Matthew A. Goodin
                                                     USPROTECT CORPORATION
                                                     Attorneys for Defendant

SF:160261v1                     REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
                                                            SUPPORT OF MOTION TO DISMISS
                                                                          Case No. C-07-5128 JF